**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **CONSOLIDATED WORK STATION** | § | |
| **COMPUTING, LLC** | § | |
| | § | |
| **Plaintiff,** | § | **CASE NO. 6:10-CV-620** |
| | § | **PATENT CASE** |
| **vs.** | § | |
| | § | |
| **DELL INC., ET AL.** | § | |
| | § | |
| **Defendants.** | | |

**ORDER**

Before the Court is Dell, Inc.'s ("Dell") Motion to Transfer Venue to the Western District

of Texas Under 28 U.S.C. § 1404(a).[1]  (Doc. No. 20, "MOTION").  Having considered the parties'

positions, the Court **DENIES** Dell's motion.

**BACKGROUND**

Consolidated Work Station Computing ("CWSC") alleges that Dell infringes U.S. Patent No.

6,823,475 ("the '475 patent") entitled "PC-CPU Motherboards With Common Fault-Tolerant Power

Supply."  MOTION at 2.  The '475 patent is directed to server systems that involve multiple PC-CPU

motherboards, including Dell's Power Edge Server products.  *Id.* at 2; OPP. at 2.  CWSC alleges that

its claimed common fault-tolerant power supply increases server reliability and enables the servers

to be used in projects such as "cloud-computing" and "software-as-a-service."  OPP. at 2.

---

[1] International Business Machines Corporation ("IBM") originally jointly moved with Dell for transfer to
the Western District of Texas.  *See generally* MOTION.  IBM settled with Plaintiff during the course of briefing and
the parties have agreed to discount IBM's documents, etc., from consideration in the §1404(a) analysis.  *See* Doc.
No. 71 ("Dell's Supplement"); Doc. No. 81 at 5.

CWSC is a Texas limited liability company formed in 2010 and is located in Houston, Texas. MOTION at 2. According to the Texas Secretary of State's records CWSC has one officer located in Cleveland, Ohio. *Id.* at 2.

Dell is a Delaware company headquartered in Round Rock, Texas located in the Western District of Texas. *Id.* Dell's Round Rock headquarters houses its principal design centers and the systems-level assembly and shipping facilities from which the accused products are shipped. *Id.* at 2-3. In 2009, Dell purchased Perot Systems and renamed it Dell Services. OPP. at 2. CWSC asserts that via "Dell Services," Dell has maintained a significant presence in Plano, Texas within the Eastern District of Texas. (Doc. No. 67, "OPP.;" Doc. No. 68, "REPLY"). The facility in Plano serves as the corporate headquarters and workplace of over 2,000 Dell Services employees. *Id.* at 4. Dell Services provides information technology consulting, remote managed services and outsourcing services to many different clients. REPLY at 3.

Dell asks for transfer to the Western District of Texas, contending that most of the relevant documents and witnesses regarding the accused servers are in Round Rock, Texas. MOTION at 2-3. CWSC contends that Dell Services uses and sells the accused servers from its facility in Plano, Texas, and that Dell Services is involved in the "design, development, testing, researching, marketing, and selling of services" that allegedly infringe the '475 patent. Opp. at 4-7; (Doc. No. 81 at 3, "SURREPLY"). As a result, CWSC contends that there are relevant documents and witnesses in this District. OPP. at 8.

**APPLICABLE LAW**

Defendants argue that they are entitled to transfer to the Western District of Texas under 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in

the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold inquiry is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589

F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319.  Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive.  *In re Volkswagen II*, 545 F.3d at 314–15.

## ANALYSIS

As an initial matter, the parties disagree whether the Court should consider Dell Services' presence in this District in its §1404(a) analysis.  The parties agree that Dell's headquarters in Round Rock will be a source of evidence regarding the accused products.  Surreply at 1.  However, the heart of the parties dispute is the relevance and importance of the activities and personnel at Dell Services' headquarters in Plano, Texas.  Dell contends that Dell Services merely provides vendor neutral business technology solutions and unremarkably uses the accused servers akin to how any third-party would use them.  Reply at 3-4.  While Dell never explicitly states that Dell Services is wholly irrelevant, it implies that any evidence or witnesses associated with the Plano facility will be of little consequence to the current suit. *Id.* at 2-8.

CWSC, on the other hand, characterizes Dell Services as an integral part of its case against Dell, Inc.  Specifically, CWSC contends that had Dell not purchased Perot Systems and created Dell Services, Perot Systems would be named as a separate defendant in this suit.  Surreply at 1. CWSC's contentions regarding Dell Services are predicated on the allegation that the actual services provided and sold by Dell Services infringe the '475 patent separate from the actual servers.  *Id.* at 3.  CWSC also contends that Dell Services is involved in the sale of the accused servers.  *Id.*  CWSC states that Dell is deliberately taking a narrow view of the infringement allegations in this case to avoid implicating the presence of Dell Services in this District for purposes of this motion.  *Id.* at 1.

4

Dell Services is not a mere retail outlet or small services facility.  Dell Services' 60 acre campus in Plano serves as its headquarters and as a workplace for over 2,000 Dell Services employees and the division itself generates near four billion dollars in annual revenue.  OPP. at 4. CWSC has conducted discovery regarding Dell Services and has specifically identified numerous witnesses (and their documents) that will be relevant to this litigation.  *See* OPP. at 4-9; SURREPLY at 2-4.  Based on the evidence derived through discovery, CWSC has demonstrated that Dell Services will likely serve as a source of evidence regarding the allegedly infringing services and sales of the accused servers.  As such, the Court will consider Dell Services presence in this District its §1404(a) analysis.

### *Threshold*

The parties do not dispute, and given Dell's presence in Round Rock, Texas, likely could not dispute, that this case could properly have been filed in the Western District of Texas.

### *The Relative Ease of Access to Sources of Proof*

Despite technological advances that certainly lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis.  *In re Volkswagen II*, 545 F.3d at 316.  Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *See id.*  This factor will turn upon which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues.  *See, e.g.*, *In re Volkswagen II*, 545 F.3d at 314–15; *In re Nintendo*, 589 F.3d at 1199; *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). However, documents that have been moved to a particular venue in anticipation of a venue dispute

5

should not be considered. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009).

While it is undisputed that Dell's headquarters in Round Rock will serve as a significant source of documents and physical evidence (SURREPLY at 1), the documents maintained by witnesses at the Dell Services facility will also serve a source of proof in this case. Dell's documents maintained in Round Rock will likely provide the bulk of the evidence regarding the design, manufacture, assembly and shipment of the accused servers. Dell's Services' documents will be relevant to the services provided by the accused servers, customer use of those services, and the marketing, sales and pricing data of the accused servers. Indeed, many of the documents maintained by Dell Services and its employees may be relevant to the damages issues in this case.

Accordingly, the Court finds that this factor is neutral or, at best, slightly favors transfer. While Dell's documents in Round Rock will likely be relevant to many issues in this litigation, the documents maintained in this District at Dell Services will also be relevant to separate issues.

### The Availability of Compulsory Process to Secure the Attendance of Witnesses

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue. *See In re Volkswagen II*, 545 F.3d at 316. The factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power." *Id.* "Absolute subpoena power" is subpoena power for both depositions and trial. *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338.

Dell contends that the identified third-party witnesses are in the United Kingdom and New Hampshire, rendering this factor neutral because neither district has subpoena power over those witnesses. MOTION at 9. CWSC asserts that this factor weighs against transfer because there are likely former employees of Dell Services in the Plano area that will have relevant knowledge and

would be within the absolute subpoena power of this Court.  OPP. at 13.

The Court finds that this factor is neutral.  While CWSC has identified former employees of Dell Services within this District, it is just as likely that there will be former Dell employees within the Western District of Texas subject to the absolute subpoena power of that court.  As such, both Courts will have absolute subpoena power over some third-party witnesses.

### The Cost of Attendance for Willing Witnesses

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding."  *In re Volkswagen I*, 371 F.3d at 204. All potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in a case or their likelihood of being called to testify at trial.  *See In re Genentech*, 566 F.3d 1343 ("Requiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").

The Fifth Circuit has adopted a "100 mile rule" to assist with analysis of this factor.  *See In re Volkswagen I*, 371 F.3d at 204–05.  "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Id.* at 205. When applying the "100 mile rule" the threshold question is whether the transferor and transferee venues are more than 100 miles apart.  *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320.  If so, then a court determines the respective distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and transferee venues.  *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320.  The "100 mile

7

rule" favors transfer (with differing degrees) if the transferee venue is a shorter average distance from witnesses than the transferor venue. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320.  Furthermore, the existence or non-existence of direct flights can impact the analysis of travel time. *See In re Volkswagen I*, 371 F.3d at 204, n.3.  Thus, regardless of the "straight line" distances calculated for the "100 mile rule," if "travel time" distances favor the transferee venue, then this factor will favor transfer.  However, the "100 mile rule" should not be rigidly applied. *See In re Genentech*, 566 F.3d at 1344.  When a particular witness will be required to travel "a significant distance no matter where they testify," then that witness is discounted for purposes of the "100 mile rule" analysis. *Id*. (discounting European witnesses and documents transported from Washington D.C. in the convenience analysis when reviewing a denial of transfer from Texas to California).

In cases where no potential witnesses are residents of the court's state, favoring the court's location as central to all of the witnesses is improper. *Id.* at 1344.  Finally, this factor favors transfer when a "substantial number of material witnesses reside in the transferee venue" and no witnesses reside in transferor venue regardless of whether the transferor venue would be more convenient for all of the witnesses. *Id.* at 1344–45.

Dell has identified at least thirteen witnesses within the Western District of Texas that may have relevant knowledge and who would have to travel over 200 miles to testify if the case were tried in this District. OPP. at 14.  On the other hand, CWSC has identified a list of Dell Services employees in this District that may have relevant knowledge and who would have to travel over 200 miles to Austin to testify should this case be tried in the Western District of Texas. SURREPLY at 2-3.  Dell also states that transfer to the Western District would not materially affect the

convenience of witnesses from Europe and the East Coast.  MOTION at 11.  While the Court agrees

that European witnesses can be discounted for purposes of the §1404(a) analysis, the East Coast

witnesses must be considered.  *See In re Genentech,* 566 F.3d at 1344 (discounting foreign witnesses

in venue analysis).  However, Dell fails to identify a single witness that would be required to travel

from the East Coast.

The parties have identified witnesses in both the Western and Eastern District of Texas;

therefore, any inconvenience suffered by one group is offset by the convenience of the other group.

Accordingly, the Court finds that this factor is neutral.

### Other Practical Problems

The parties do not dispute that this factor is neutral.  MOTION at 12; OPP. at 14.

### The Local Interest in Having Localized Interests Decided at Home

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed

upon the people of a community which has no relation to the litigation."  *In re Volkswagen I*, 371

F.3d at 206.  This factor analyzes the "factual connection" that a case has with both the transferee

and transferor venues.  *See id.*  Generally, local interests that "could apply virtually to any judicial

district or division in the United States" are disregarded in favor of particularized local interests.

*In re Volkswagen II*, 545 F.3d at 318 (in a products liability suit, disregarding local interest of

citizens who used the widely-sold product within the transferor venue); *In re TS Tech*, 551 F.3d at

1321.  Thus, when products are sold throughout the United States, citizens of a venue do not have

a particularized interest in deciding the dispute simply based on product sales within the venue.  *In*

*re Nintendo*, 589 F.3d at 1198.

Dell contends that the Western District of Texas has a "strong connection" to this case

because the accused products were developed, assembled and shipped from there and "all" relevant witnesses are present in that District. MOTION at 12. CWSC counters that this District has a "strong connection" to this case because of Dell Services' presence and relevant evidence and witnesses located in this District. Opp. at 15. The Court finds that this factor is neutral because both districts have a connection to this case.

***Other Public Interest Factors***

The parties do not dispute that the remaining public interest factors (judicial economy, court congestion, conflicts of laws and familiarity with the governing law) are neutral. MOTION at 14; OPP. at 15.

## CONCLUSION

Based on the foregoing, the Court finds that Dell has not demonstrated that the Western District of Texas is "clearly more convenient" than this District. Almost all of the relevant factors are neutral and Dell has not provided a compelling reason why the witnesses and documents in this District, or Dell Services itself, should be ignored. As such, the Court **DENIES** Dell's motion.

**So ORDERED and SIGNED this 28th day of September, 2011.**



**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**